UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LORI NADINE SHERES,

      Plaintiff,

v.                                  Case No:  6:18-cv-1000-Orl-DNF

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____

## OPINION AND ORDER

Plaintiff, Lori Nadine Sheres, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and Disability Insurance Benefits ("DIB"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed memoranda setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

### I. Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

#### A. Social Security Act Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382a(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The

impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

## B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that she is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i).  If a claimant is engaging in any substantial gainful activity, she will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that she is suffering from a severe impairment or combination of impairments.  *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii).  If the claimant's impairment or combination of impairments does not significantly limit her physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled.  20 C.F.R. § 1520(c).

At step three, the claimant must prove that her impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii).  If she meets this burden, she will be considered disabled without consideration of age, education and work experience.  *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that her impairment meets or equals one of the impairments listed in Appendix 1, she must prove that her impairment prevents her from performing her past relevant work.  *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of her past relevant work.  20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f).  If the claimant can still perform her past relevant work, then she will not be found disabled.  *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience.  *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, she will be found not disabled. *Id*.  In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant.  *Allen v. Sullivan*, 880 F.2d

1200, 1201 (11th Cir. 1989).  There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert ("VE").  *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that she is not capable of performing the "other work" as set forth by the Commissioner.  *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

### C.  Procedural History

Plaintiff filed an application for a period of disability and DIB on February 24, 2015, alleging that she became disabled on January 10, 2014. (Tr. 287-88).  Plaintiff's application was denied initially on April 29, 2015, and upon reconsideration on August 7, 2015. (Tr. 216-220, 225-27).  Plaintiff requested a hearing, and, on May 5, 2017, an administrative hearing was held before Administrative Law Judge Sylvia H. Alonso ("the ALJ"). (Tr. 148-181).  On August 11, 2017, the ALJ entered a decision finding that Plaintiff was not disabled. (Tr. 19-37).  Plaintiff requested review of the ALJ's decision, and, on May 11, 2018, the Appeals Council denied review of the ALJ's decision. (Tr. 1-6).  Plaintiff initiated this action by Complaint (Doc. 1) on June 25, 2018.

### D.  Summary of the ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 10, 2014, the alleged onset date. (Tr. 21).  At step two, the ALJ found that Plaintiff had the following severe impairments: spine disorder, bilateral upper extremity arthropathy, and asthma. (Tr. 22).  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 26).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to

> perform light work defined in 20 CFR 404.1567(b) except the claimant can frequently climb ramps and stairs and occasionally climb ladders, ropes, and scaffolds. The claimant can frequently stoop, kneel, and crawl and can occasionally crouch. The claimant must avoid concentrated exposure to noise, odors, fumes, dusts, gases, and unprotected heights. The claimant can frequently perform overhead and lateral reaching and handling with both upper extremities.

(Tr. 27). At step four, the ALJ found that Plaintiff was capable of performing her past relevant work as a paralegal, administrative clerk, risk auditor, and closer as such work does not require the performance of work-related activities precluded by Plaintiff's RFC. (Tr. 35). The ALJ proceeded to step five and made the alternative finding that Plaintiff could perform the work of such jobs as title examiner, file clerk, and clerk, general. (Tr. 36). The ALJ concluded that Plaintiff had not been under a disability from January 10, 2014, through the date of the decision, August 11, 2017. (Tr. 37).

## II. Analysis

Plaintiff raises three issues on appeal: (1) whether the ALJ erred by failing to properly weigh medical opinions of record; (2) whether the Appeals Council erred by rejecting new and material evidence; and (3) whether the ALJ erred by failing to properly evaluate Plaintiff's testimony. The Court will address each issue in turn.

### (a) Whether the ALJ erred by failing to properly weigh medical opinions of record.

Plaintiff argues that the ALJ erred by failing to properly evaluate the opinions of three physicians: treating physician K. Derek Chan-Pong, M.D., examining physician Dina Trespalacios, M.D., and non-examining physician Irene Lipinski, M.D. In response, Defendant

argues that the ALJ properly considered these opinions and that substantial evidence supports the weight the ALJ assigned their respective opinions. (Doc. 29 p. 6-15).

At the fourth step in the evaluation process, the ALJ is required to determine a claimant's RFC and based on that determination, decide whether the plaintiff is able to return to his or her previous work. *McCruter v. Bowen,* 791 F.2d 1544, 1547 (11th Cir. 1986). The determination of a claimant's RFC is within the authority of the ALJ and along with the claimant's age education, and work experience, the RFC is considered in determining whether the claimant can work. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997). Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the ALJ's RFC determination at step four. *See Rosario v. Comm'r of Soc. Sec.,* 877 F.Supp.2d 1254, 1265 (M.D. Fla. 2012).

"The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (citation omitted). The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Social Security,* 631 F3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)).

### (1) Derek Chan-Pong, M.D.

The record shows that on February 19, 2015, Plaintiff was examined by gastroenterologist K. Derek Chan-Pong, M.D. (Tr. 588). Plaintiff reported nausea without vomiting. The nausea appeared to be related to stress. Plaintiff reported getting nauseated when under stress and will even gag when under severe stress. Plaintiff reported occasional bloating, cramping relieved by defecation. She had 2-3 bowel movements per day with some blood. She lost 21 pounds in the last 6 months. (Tr. 588). Dr. Chan-Pong diagnosed (1) Reflux and hiccups; (2) Diarrhea with history of irritable bowel syndrome and has been under increased stress recently; (3) Nausea, induced by stress. (Tr. 590). Dr. Chan-Pong noted that Plaintiff's recent increased stress would explain the exacerbation of her irritable bowel syndrome symptoms. (Tr. 590).

On April 13, 2015, Dr. Chan-Pong received the results of the antrum and body of the stomach biopsy and left colon random biopsy. (Tr. 1139). The diagnosis was (1) Chronic Gastritis, mild, predominantly involving the gastric antrum; and (2) Benign Colonic Mucosa (Tr. 1139). Dr. Chan-Pong reviewed the results and noted no H. pylori infection and normal colon biopsies. (Tr. 1140).

Plaintiff argues that the ALJ erred by failing to include in her RFC finding Dr. Chan-Pong's opinion that stress would aggravate Plaintiff's IBS and nausea. (Doc. 27 p.26). The Court rejects this argument as Dr. Chan-Pong's February 2015 treatment notes do not offer an opinion which the ALJ was required to specifically weigh. The treatment notes provide that ". . . patient has a history of irritable bowel syndrome and has been under increased stress recently. This would explain the exacerbation of her symptoms." (Tr. 590). Dr. Chan-Pong's statement was not a judgment about Plaintiff's prognosis and statement of what Plaintiff can still do despite her impairments, but rather a statement explaining the recent exacerbation of her symptoms Plaintiff's. In her decision, the ALJ noted Plaintiff's allegations that stress made her gastritis symptoms worse.

For these reasons, the Court will not remand to have the ALJ specifically address this treatment note.

### (2) Dina Trespalacios, M.D.

The record shows that on March 10, 2015, Plaintiff was examined by Dina Trespalacios, M.D., staff physician, a primary care physician for purposes of determining VA disability ratings. (Tr. 868-946). Dr. Trespalacios noted Plaintiff had been diagnosed with Irritable Bowel Syndrome since 2013 (Tr. 869). Plaintiff reported intermittent diarrhea often with blood on average of once monthly with a duration between 4 days and 2 weeks. The episodes are accompanied by nausea and vomiting and some intermittent constipation. Plaintiff also had intermittent "hiccup burps" that are painful. (Tr. 869). Plaintiff reported stress aggravates the condition. Plaintiff reported "when working more regularly the symptoms were more or less daily. However, since being laid off and working part-time/free lance the episodes are less frequent." (Tr. 870). Dr. Trespalacios opined Florastor (probiotic) and Ranitidine are required to control the intestinal condition (Tr. 870). Dr. Trespalacios opined the following signs and symptoms were attributable to Plaintiff's intestinal condition: (1) Diarrhea episodes occurring once monthly and lasting 4 days to 2 weeks with 4-6 loose/poorly formed bowel movements daily; (2) Alternating diarrhea and constipation; (3) Abdominal distension, intermittent bloating often associated with nausea; (4) Nausea occurring 3-4 times per month with a duration of days to 2 weeks; (5) Vomiting accompanies the nausea (Tr. 871). Dr. Trespalacios opined Plaintiff was having frequent episodes of bowel disturbance with abdominal distress. (Tr. 871). Dr. Trespalacios noted Plaintiff lost 5 pounds. (Tr. 872). Dr. Trespalacios opined the Plaintiff's intestinal condition did not impact her ability to work. In support, Dr. Trespalacios noted Plaintiff was working part-time approximately 40-50 hours per month as a freelance administrative consultant. (Tr. 873).

Dr. Trespalacios also examined Plaintiff to evaluate Plaintiff's chronic back conditions. Dr. Trespalacios noted Plaintiff was diagnosed with service connected thoracolumbar spine myositis with DDD (degenerative disc disease) and BLE (bilateral lower extremity) radiculopathy. (Tr. 874). Plaintiff reported constant pain in both the thoracic and lumbar regions accompanied by bilateral lower extremity pain, numbness and tingling on left more than right side. Plaintiff had a recent flare due to spasms at the thoracic level which caused her to be unable to walk for several hours. Plaintiff reported a baseline pain level of 7/10. (Tr. 874). Plaintiff reported able to sit for no more than 1 hour, able to stand for no longer than 30 minutes, and able to walk for no longer than ½ mile. Plaintiff reported frequent flares several times a month that last 3-4 days at a pain level of 9/10. During a flare, Plaintiff reported not being able to sit for more than 15 minutes, stand for more than 15 minutes, or walk for more than 15 minutes. (Tr. 874-75). Plaintiff reported being laid off job as paralegal in 1/2014 due to multiple ailments. Plaintiff reported she now works approximately 40-50 hours per month as an administrative consultant. (Tr. 875). Plaintiff reported a limited ability to crochet, play guitar, play keyboard, sing, take care of pets, read, photography, and shoot guns. (Tr. 875). On exam, Dr. Trespalacios noted abnormal range of motion in forward flexion 60 degrees, extension 10 degrees, right lateral flexion 10 degrees, left lateral flexion 20 degrees, right lateral rotation 25 degrees, and left lateral rotation 25 degrees. (Tr. 875-76). Dr. Trespalacios opined the chronic pain caused Plaintiff to have a functional loss. (Tr. 876). On exam, Dr. Trespalacios noted pain with weight bearing, and localized tenderness on palpation in the mid thoracic paraspinous muscles and SI region. (Tr. 876). Dr. Trespalacios noted the exam was not done during a flare-up. (Tr. 877). On exam, Dr. Trespalacios noted an abnormal gait or abnormal spinal contour caused by muscle spasm. During exam, Dr. Trespalacios noted extensive spasm of thoracic paraspinous muscles bilaterally. (Tr. 878). Dr. Trespalacios opined Plaintiff had overall

less movement than normal due to ankyloses, adhesions, etc.… There was a disturbance of locomotion, interference with sitting and standing. (Tr. 878). Muscle strength was normal. Dr. Trespalacios noted decreased sensation in the lower leg and ankle and foot/toes. Straight leg raise test was negative bilaterally. (Tr. 880). Dr. Trespalacios opined Plaintiff had mild pain in the bilateral lower extremities. (Tr. 880). Dr. Trespalacios opined the L4/L5/S1/S2/S3 nerve roots were involved bilaterally. (Tr. 881). However, Dr. Trespalacios opined the radiculopathy was of mild severity. Dr. Trespalacios opined Plaintiff should use a "back brace during periods of extended driving/prolonged sitting or physical work." (Tr. 882). Dr. Trespalacios opined Plaintiff's back condition impacts her ability to work. (Tr. 883). Dr. Trespalacios opined Plaintiff requires frequent breaks if doing heavy lifting or prolonged sitting. (Tr. 883).

Plaintiff was examined by Dr. Trespalacios due to a Neck condition for purposes of determining VA disability ratings. (Tr. 897). Dr. Trespalacios noted Plaintiff had been diagnosed with a service connected cervical spine myositis with DDD and BUE (bilateral upper extremity) radiculopathy (Tr. 898). Currently, Plaintiff reported constant pain to entire cervical spine and accompanied by headaches, BUE weak grip strength (often dropping things), poor sleep quality. Pain level 6/10. Plaintiff reported being able to sit for no more than 30-45 minutes (i.e. at computer). Plaintiff reported FLARES 3 times per week for 1-2 days duration when the pain level increases to 9/10 and Plaintiff is able to sit no more than 15 minutes and has difficulty driving during flare. Plaintiff reported getting special rear view mirrors for this purpose. (Tr. 898). On exam, Dr. Trespalacios noted abnormal range of motion in all directions, but particularly left lateral rotation, 15 degrees, and right lateral rotation, 25 degrees. (Tr. 900). Dr. Trespalacios opined Plaintiff would have difficulty driving. Dr. Trespalacios noted tenderness on palpation throughout trapezius muscles bilaterally and SCM muscles bilaterally. (Tr. 900). Dr. Trespalacios opined

Plaintiff had less movement than normal, disturbance of locomotion, interference with sitting and standing (Tr. 902). Dr. Trespalacios noted finger strength decreased 4/5 bilaterally. (Tr. 903). Dr. Trespalacios noted mild radicular pain bilaterally in the upper extremities due to involvement of C7 nerve roots and C8/T1 nerve roots. (Tr. 904). Dr. Trespalacios noted imaging studies document arthritis. (Tr. 906). Dr. Trespalacios opined the neck condition impacts Plaintiff's ability to work. Specifically, Dr. Trespalacios opined Plaintiff requires frequent breaks if doing prolonged sitting or desk work. (Tr. 906).

Plaintiff was also examined by Dr. Trespalacios due to Headaches for purposes of determining VA disability ratings. (Tr. 939). Dr. Trespalacios noted Plaintiff had been diagnosed with migraine headaches and tension headaches in 2012. (Tr. 940). Plaintiff reported onset in 2012. Plaintiff reported the headaches are often brought on by stress or exacerbation of neck condition (Tr. 940). Currently, Plaintiff reported episodic headaches with FLARES 3-4 times per month lasting 1-3 days with a pain level of 9/10, nausea, occasional photophobia, and phonophobia. (Tr. 941). Plaintiff reported being out of work one week in August 2013 due to headache. Plaintiff took Naratriptan and Fioricet as needed. Plaintiff reported she generally has to stay in bed in a darkened room unable to do anything during a headache. (Tr. 941). Plaintiff reported prostrating attacks of headache pain from migraines about once a month. (Tr. 942). Dr. Trespalacios opined Plaintiff is unable to perform basic tasks expected when employed during a headache. (Tr. 943). Dr. Trespalacios opined Plaintiff would have prostrating attacks of migraine headaches on average once every month. (Tr. 942-43).

In her decision, the ALJ explained the weight accorded to Dr. Trespalacios opinion as follows:

> To the extent the [Department of Veterans Affairs]'s evaluations are contrary to the undersigned's findings herein, the undersigned accords them little weight because they are inconsistent with the substantial evidence of record

discussed herein and with the March 2015 physical examination reports of the claimant's C & P examiner, Dina Trespalacios, MD. For example, Dr. Trespalacios reported that the claimant had bilateral lower extremity radicular pain or other signs or symptoms of radiculopathy, but she did not have it constantly, and it was only mild intermittently with only mild parasthesias or dysesthesias and only mild numbness. Additionally, Dr. Trespalacios reported the claimant only mild bilateral lower extremity radiculopathy involving the L4/L5/S1/S2/S3 nerve roots. Further, Dr. Trespalacios noted that on physical examination the claimant had negative straight leg raising test, normal upper and lower extremity strength of 5/5, no muscle atrophy and normal reflexes. Regarding Dr. Trespalacios' neck ( cervical spine) Disability Benefits Questionnaire, although Dr. Trespalacios noted the claimant had cervical spine tenderness and range of motion deficits, she related that the claimant did not have cervical spine muscle spasm or guarding, no strength deficits in the upper extremities, aside from 4/5 strength in the claimant's bilateral fingers, no muscle atrophy, normal reflexes, and normal upper extremity sensory examination. Notably, although she stated the claimant had radicular pain or other signs or symptoms of radiculopathy in her bilateral upper extremities, she only had it constantly at an only mild level, but did not have it intermittently and did not have parasthesias or dysesthesias or numbness. Additionally, while Dr. Trespalacios reported the claimant had involvement of the C7 and C8/T1 nerve roots, she did not have any other signs of upper extremity radiculopathy. Further, Dr. Trespalacios reported that the claimant was able to perform repetitive use testing with at least three repetitions and had no weakness, fatigue ability, or incoordination that significantly limited functional ability with repeated use overtime (Exhibit 14F). 20 CFR § 404.1527, 20 CFR § 416.927, and Social Security Rulings 06-03p and 96-5p.

. . .

To the extent that the Department of Veterans Affairs' March 2016 evaluations are consistent with the claimant's residual functional capacity, the undersigned accords them deference and assigns them some weight. Notably, the DVA's March 2016 evaluations and the undersigned's residual functional capacity are consistent with the March 2015 Shoulder and Arm Conditions Disability Benefits Questionnaire. Specifically, Dr. Trespalacios reported that while the claimant's physical examination results were mainly normal, she did have bilateral shoulder positive Empty-Can test and positive Lift-Off Subscapularis test (Exhibit 14F). Yet the undersigned does not give the DVA's evaluations greater weight based on the evidence previously discussed above *(see* Exhibits 4F and 20F). 20 CFR § 404.1527, 20 CFR § 416.927, and Social Security Rulings 06-03p and 96-5p.

(Tr. 33).

Plaintiff argues that the ALJ's provided an insufficient rationale for the Court to determine whether the ALJ adequately considered Dr. Trespalacios' multiple restrictions. In particular, Plaintiff argues that the ALJ did not consider Dr. Trespalacios' notation that Plaintiff occasionally used a back brace during periods of extended driving/prolonged sitting or physical work; that employment requiring strenuous physical activity such as heavy lifting or prolonged periods of sitting without frequent breaks would be limited; and that during headaches Plaintiff would be unable to perform basic tasks expected when employed. (Doc. 27 p. 28-30). In response, Defendant argues that substantial evidence supports the ALJ's treatment of Dr. Trespalacios' opinion. (Doc. 29 p. 7-13).

In this case, the Court finds no error in the ALJ's treatment of Dr. Trespalacios' opinion. As a non-treating, one-time examing physician, Dr. Trespalacios' opinion was not entitled to any special deference. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). Nevertheless, the ALJ addressed the opinion at considerable length and explained her reasons for according it the weight she deemed appropriate. As Defendant notes, contrary to Plaintiff's assertion, Dr. Trespalacios did not opine that Plaintiff should use a back brace. Rather Dr. Trespalacios noted Plaintiff's report that she used a back brace during periods of extended driving/prolonged sitting or physical work. Dr. Trespalacios did not opine that a back brace was medically necessary or resulted in functional limitations. Thus, the ALJ was not required to weigh it and the ALJ did not err by omitting a back brace from her RFC finding or from consideration by the vocational expert. Furthermore, although Dr. Trespalacios opined that Plaintiff's back impairments would result in work limitations, e.g., "employment requiring strenuous physical activity such as heavy lifting or prolonged periods of sitting without frequent breaks would be limited," the ALJ's RFC accounts

for this limitation as the ALJ limited Plaintiff to light work, which by definition excludes heavy lifting. (Tr. 27). *See* 20 C.F.R. 404.1567(b) (defining light work).

Moreover, light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday with sitting *occurring intermittently* during the remaining time. See SSR 83-10, 1983 WL 31251, at *5. Plaintiff testified that she could sit up to 30 minutes before needing to stand, which is consistent with the ability to perform light work. (Tr. 37). Thus, Dr. Trespalacios' opinion does not directly contradict the ALJ's RFC finding.

Dr. Trespalacios also opined that during headaches (3-4 times a month with a duration of 1-3 days each), Plaintiff would be unable to perform basic tasks expected when employed. (Tr. 941, 943). The ALJ found Plaintiff's headaches were non-severe and, thus, had no more than a minimal effect on Plaintiff's ability to perform basic work activities. (Tr. 22). *See* 20 C.F.R. § 404.1522(a) (defining non-severe impairment). In making that finding, the ALJ determined that Plaintiff's headaches were controlled conservatively with medication and that the record did not support any work-related limitations. (Tr. 22). The ALJ's finding is well supported by substantial evidence in the record.

For example, in March 2014, Plaintiff reported that she only had one headache in the last two and a half months. (Tr. 530). In October 2014, Plaintiff reported that she had had only one headache since January 2014. (Tr. 1597). Although Plaintiff reported in March 2015 that she had headaches three times per week for one to two days, she also reported that at the same time she was working 40-50 hours a month as an administrative consultant. (Tr. 898-99).  In April 2015, Plaintiff reported that her headaches had improved and were not as often. (Tr. 1099, 1103). In January 2016, Plaintiff reported that she had two headaches a month lasting 24 hours but that she had excellent results with the medications Fiorecet and Sumatriptan. (Tr. 1652). She also reported

in May 2016 that her headaches were much better and that the pharmacy discontinued her Fiorecet and Sumatriptan because she had not refilled them in 240 days. (Tr. 1707). At the hearing, Plaintiff testified that the frequently of her headaches had decreased and that she got migraine headaches about once or twice a month that typically last a day or two. (Tr. 164). Given the ALJ's consideration of her headaches, any error by the ALJ in not addressing Dr. Trespalasios' opinion about the functional impact of Plaintiff's headaches was harmless because remand to further consider her opinion would not change the administrative outcome. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").

The Court is also unconvinced by Plaintiff's argument that the ALJ erred by failing to recognize that the VA physical therapy department issued Plaintiff a standard cane in March 2016 due to a gait abnormality. "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." SSR 96-9p, 1996 WL 374185, at *7. In this case, however, beyond a vague reference to a gait abnormality, the physical therapy note does not explain the need for the cane or the circumstances for which it was needed, e.g., all the time, some of the time, or where. (Tr. 1765). The medical record after March 2016 does not reference Plaintiff using a cane at appointments and a VA nursing note in July 2016 reflects that Plaintiff did not require an ambulatory assistive device and noted that her gait and balance were normal. (Tr. 1877). The ALJ noted that a VA medical record in February 2017 reflected that Plaintiff had a normal balanced gait. (Tr. 32, 2159). For these reasons, the Court agrees with Defendant that the scant medical evidence regarding her need for and use of a cane is insufficient to warrant remand.

### (3) Irene Lipinski, M.D.

The record shows that on July 29, 2015, non-examining state agency physician Irene Lipinski, M.D. opined Plaintiff could lift 20 pounds occasionally and 10 pounds frequently. (Tr. 205). Dr. Lipinski opined claimant could stand and/or walk about 6 hours in an 8-hour workday and sit about 6 hours in an 8-hour workday. (Tr. 205). Dr. Lipinski opined Plaintiff must "avoid even moderate exposure" to noise "secondary to [headaches] rated frequently." (Tr. 206) (emphasis added).

In her decision, the ALJ explained the weigh she accorded Dr. Lipinski's opinion as follows:

> On July 29, 2015, State agency medical consultant Irene Lipinski, M.D., completed a residual functional capacity assessment. Dr. Lipinski opined that the claimant could perform light exertional level work as it is defined in the Social Security Regulations and in the Dictionary of Occupational Titles. Dr. Lipinski opined the claimant could frequently climb ramps and stairs, stoop, kneel, and crawl, and could occasionally climb ladders, ropes, or scaffolds and could occasionally crouch with unlimited balancing. Dr. Lipinski opined that the claimant must avoid concentrated exposure to hazards, in particular heights, and to fumes, odors, dusts, gases, poor ventilation, etc., and must avoid even moderate exposure to noise (Exhibit 3A).

> The undersigned accords considerable weight to Dr. Lipinski's opinion because it is supported by, and consistent with, the substantial evidence of record as discussed herein. For example, on August 14, 2015, radiologist Michael Grainger, MD, performed cervical, thoracic, and lumbar spine MRI scans, which he compared to the claimant's June and July 2014 MRI scans. Dr. Grainger reported that the claimant's cervical spine MRI scan showed *stable findings* with central disc bulge at C4-5 abutting and only *mildly* compressing the anterior cervical cord with no cervical change to suggest gliosis. Additionally, Dr. Grainger related the claimant's cervical spine MRI scan revealed a *small* central disc protrusion versus thickening of the posterior longitudinal ligament effecting the anterior thecal sac and nearly abutting the anterior cervical cord at C5-6 and C6-7, significant bilateral foraminal effacement secondary to facet arthropathy, which primarily affects the left C4, right *C5,* and right C6 nerve roots, and grade 1 spondylolisthesis at C3-4. Dr. Grainger related that the claimant's thoracic spine MRI showed *mild* spondylotic changes in the mid to

thoracic spine, *without significant central canal or neural foraminal narrowing,* and *without significant change when compared with the previous exam.* Further, Dr. Grainger documented that the claimant's lumbar spine MRI scan revealed stable findings, including straightening of the normal lordotic curve, and *mild* disc desiccation and disc bulge at Ll-2 and L3-4, a moderate disc bulge at L5-Sl *without significant central canal stenosis,* but disc material does abut the bilateral exiting L-5 nerve roots *slightly,* as seen on the previous exam (Emphases supplied) (Exhibit 21F). Of note, one of the previous exams that Dr. Grainger referred to is the claimant's July 14, 2014, lumbar spine MRI scan. Specifically, in July 2014 radiologist, Thomas Foster, MD, reported the claimant's lumbar spine MRI scan revealed, in pertinent part, *mild* posterior central herniation at L5-S 1 and *no evidence of canal stenosis or nerve root impingement* (Emphasis added)(Exhibit 5F).

Further supporting Dr. Lipinski's opinion is the evidence that while she considered the claimant's asthma in providing limitations in the claimant's ability to perform work-related activity, additional limitations are not warranted by the objective medical evidence, which shows that the claimant's asthma is generally well controlled with medications. Notably, as recently as February 28, 2017, VA physician Bruna Ferreira, MD, reported that the claimant had no asthma exacerbations and no need for prednisone. Additionally, Dr. Ferreira noted on physical examination the claimant's lungs were clear to auscultation bilaterally and there was no wheezing (Exhibit 40F). Further, in July 2015, Dr. Cooper reported that on objective physical examination of the claimant's respiratory system the claimant had good bilateral air entry without any adventitious breath sounds or audible pleural rubs. In addition, Dr. Cooper found that the claimant had *controlled asthma.* (emphasis supplied)(Exhibit 20F). Moreover, the totality of the evidence shows that since the claimant's alleged disability onset date she did not have any asthma attacks with episodes of respiratory failure, no asthma exacerbations requiring physician visits, and a normal pulmonary function test. Another factor supporting Dr. Lipinski's opinion is that the claimant reported she could cook simple meals, do light house cleaning within her physical tolerances, drive, travel independently, shop, read, watch television, and take care of her pets (Exhibit 3E). While the undersigned finds that the claimant's migraine headaches are not a severe impairment, she provided for a residual functional capacity limitation in the claimant's ability to be exposed to concentrated amounts of noise because she took into account the claimant's complaints of headaches to her medical providers. The undersigned notes that she accords considerable, but not great, weight to Dr. Lipinski's opinion because she accorded deference to the claimant's complaints of bilateral upper extremity pain and provided for limitations in her residual functional capacity in the claimant's ability to reach and handle with her bilateral upper extremities. Accordingly, based on the

foregoing, the undersigned finds that Dr. Lipinski's opinion is entitled to considerable weight. 20 CFR § 404.1527, 20 CFR § 416.927, and <u>Social Security Ruling</u> 96-6p.

(Tr. 32-33).

Plaintiff argues that although the ALJ gave considerable weight to Dr. Lipinski's opinion, the ALJ failed to include headaches as a severe impairment at step two and to include Dr. Lipinski's opinion that Plaintiff must "avoid even moderate exposure" to noisy environments. (Doc. 27 p. 31). Plaintiff argues that Dr. Lipinski's opinion that Plaintiff should "avoid even moderate exposure" to noisy environments is not equivalent to the ALJ's restriction against "concentrated exposure to noise". (Doc. 27 p. 32). Plaintiff contends that the ALJ's error is not harmless because if the ALJ had adopted Dr. Lipinski's opinion, the occupational base would have been reduced. (Doc. 27 p. 33). In response, Defendant argues that any error was harmless because the ALJ found that there was one "quiet" job that Plaintiff could perform that existed in significant numbers in the national economy. (Doc. 29 p. 13-15).

In this case, the Court finds no error in the ALJ's failure to adopt Dr. Lipinski's opinion that Plaintiff must avoid even moderate exposure to noise. At step five, the ALJ found that Plaintiff was capable of performing the job title examiner which has a quiet noise level. (Tr. 36). DOT § 206.367-010. At the administrative hearing, the VE testified that there were approximately 9000 title examiner positions in the national economy. (Tr. 36, 176). "[W]ork exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country." 20 C.F.R. § 404.1566(a). In addition, "[w]ork exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications." 20 C.F.R. § 404.1566(b) (emphasis added). It is the ALJ, relying on the VE's

testimony, who determines whether the number of jobs constituted a significant number. See id.; 20 C.F.R. § 404.1512(b)(3). Here, the ALJ found that 9000 title examiner jobs nationally constituted a significant number of jobs. (Tr. 36). *See Brooks v. Barnhart*, 133 F. App'x 669, 671 (11th Cir. 2005) (holding that substantial evidence supported ALJ's finding that 840 jobs constituted a significant number in the national economy). Accordingly, because there was a significant number of jobs that Plaintiff could have performed even if the ALJ had included Dr. Lipinski's noise limitations, the Court finds remand inappropriate.

**(b) Whether the Appeals Council erred by rejecting new and material evidence.**

Plaintiff argues that the Appeals Council erred by improperly rejecting new and material evidence that was submitted after the ALJ's decision. (Doc. 27 p. 33). Specifically, Plaintiff argues that the Appeals Council should have accepted evidence from Plaintiff's treating psychologists Allison L. Nevin, Psy.D. and Earnest Seiler, M.D. (Doc. 27 p. 33-34). Plaintiff argues that she had good cause to submit this evidence to the Appeals Council late because it did not exist prior to the hearing and was obtained by Plaintiff at the advice of new counsel. (Doc. 27 p. 34). Plaintiff contends that she attempted by submitting the new evidence to clarify an unexpected circumstance, i.e., the ALJ's unexpected finding that Plaintiff's depression and anxiety were not severe. (Doc. 27 p. 35). Plaintiff contends that the evidence from Drs. Nevin and Seiler is new, material, and relates back to the time before the decision. (Doc. 27 p. 36).

Defendant argues that the Appeals Council considered the new evidence and properly determined that the new evidence does not provide a basis for changing the ALJ's decision. (Doc. 29 p. 21-22). Defendant argues that the Appeals Council was not required to give a detailed analysis of the new evidence and substantial evidence supports the Appeals Council's determination. (Doc. 29 p. 21-23).

The record shows that after the ALJ entered her decision, Plaintiff submitted evidence from Dr. Nevin, specifically a completed Mental Ability to do Work Related Activities form. (Tr. 8). The form provided that it covered the time period beginning October 15, 2014, through October 23, 2017. (Tr. 8). Dr. Nevin opined Plaintiff was "seriously limited" in her ability to do 7 of the mental abilities and aptitudes needed to do unskilled work. (Tr. 8). Specifically, Dr. Nevin opined Plaintiff was seriously limited in her ability to understand and remember and carry out very short and simple instructions, maintain regular attendance and be punctual, complete a normal workday and workweek without interruptions from psychologically based symptoms, and deal with normal work stress. In addition, Dr. Nevin opined Plaintiff was unable to meet competitive standards in her ability to maintain attention for two hour segment. Finally, Dr. Nevin opined Plaintiff had no useful ability to remember work like procedures. (Tr. 8). In support, Dr. Nevin opined Plaintiff had trouble keeping focus and maintain concentration for over one minute. Dr. Nevin opined Plaintiff gets anxiety attacks in public especially when it's noisy. Dr. Nevin opined Plaintiff has a problem with motivation and adapting to changes in routine. Dr. Nevin opined Plaintiff experienced physical intestinal symptoms when stressed. Dr. Nevin further opined Plaintiff gets migraines, depressive symptoms, and anxiety attacks. Dr. Nevin opined Plaintiff would be absent more than four days per month. (Tr. 9).

Plaintiff also submitted the August 11, 2017 opinion that Plaintiff could benefit from a service dog due to a number of mental health issues including depression and anxiety. (Tr. 61-62).

A claimant is generally permitted to present new evidence at each stage of his administrative process. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1261 (11th Cir. 2007), and 20 C.F.R. § 404.900(b). Evidence submitted for the first time to the Appeals Counsel is determined

under a Sentence Four analysis. *Id.* An Appeals Council must consider new and material evidence that "'relates to the period on or before the date of the administrative law judge hearing decision' and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Id.* (20 C.F.R. §§ 404.970(b), 416.1470(b)). New evidence is considered material and thereby warranting a remand if "'there is a reasonable possibility that the new evidence would change the administrative outcome.'" *Id.*

In this case, the Court finds no error in the Appeals Council's treatment of the evidence submitted after the ALJ's decision. The Appeals Council considered the newly submitted evidence and explained that "We find that this evidence does not show a reasonable probability that it would change the outcome of the decision." (Tr. 2). Thus, contrary to Plaintiff's argument, the Appeals Council did not reject this new evidence, but considered it and determined that it did not change the administrative outcome. Substantial evidence supports this determination. Although VA treatment notes in July 2017 suggest that Dr. Nevin provided Plaintiff individual psychotherapy (Tr. 80, 82), there are no treatment records from Dr. Nevin in the certified administrative record and she does she identify how long she had been treating Plaintiff (Tr. 8-10). Dr. Nevin's opinion is neither well supported nor well explained. Similarly, Dr. Seiler's opinion that Plaintiff could benefit from a service dog is vague. Dr. Seiler does not state that Plaintiff would need the service dog during work hours or the service it would provide. Accordingly, the Court finds no error in the Appeals Council's consideration of the newly submitted evidence.

**(c) Whether the ALJ erred by failing to properly evaluate Plaintiff's testimony.**

Plaintiff argues that the ALJ erred by failing to follow the Eleventh Circuit pain standard and SSR 16-3p when evaluating Plaintiff's testimony of limitations. (Doc. 27 p. 37). Plaintiff argues that her testimony is well supported by the record but that the ALJ selectively mentions

parts of the record out of context in which they were written. (Doc. 27 p. 39-40). In response, Defendant argues that the ALJ properly followed the Eleventh Circuit pain standard and SSR 16-3p when evaluating Plaintiff's testimony regarding her pain and other symptoms. (Doc. 29 p. 15).

When a claimant attempts to establish disability based on her subjective complaints, she must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of the alleged symptoms or that the medical condition could be reasonably expected to give rise to the alleged symptoms. *See* 20 C.F.R. § 404.1529; *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Interpreting these regulations, the Eleventh Circuit held that to establish disability based on testimony of pain and other symptoms, a claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *See Wilson*, 284 F.3d at 1225 (*citing Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). The regulations contain the same language as the pain standard. *See Wilson*, 284 F.3d at 1226; *Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (pain standard is "fully consistent with" the Commissioner's regulations).

If the claimant establishes that she has an impairment that could reasonably be expected to produce her alleged symptoms, then the intensity and persistence of her alleged symptoms and their effect on her ability to work must be evaluated. *See* 20 C.F.R. § 404.1529(c)(1); *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). When evaluating a claimant's statements regarding the intensity, persistence, or limiting effects of her symptoms, the ALJ considers all the evidence, objective and subjective. *See* 20 C.F.R. § 404.1529. The ALJ may consider the nature of a claimant's symptoms, the effectiveness of medication, a claimant's method of treatment, a

claimant's activities, measures a claimant takes to relieve symptoms, and any conflicts between a claimant's statements and the rest of the evidence. *See* 20 C.F.R. § 404.1529(c)(3), (4). The ALJ is not required explicitly to conduct a symptom analysis, but the reasons for discounting a claimant's testimony of her pain and other symptoms must be clear enough that they are obvious to a reviewing court. *See Foote*, 67 F.3d at 1562. "A clearly articulated [symptom assessment] with substantial supporting evidence in the record will not be disturbed by a reviewing court." Id. (citation omitted).

Social Security Ruling 16-3p rescinded a previous social security ruling that concerned the credibility of a claimant. *See* SSR 16-3p, 82 Fed. Reg. 49,462, 49,463 (Oct. 25, 2017). SSR 16-3p removed the use of the term "credibility" from its sub-regulatory policy because the Social Security Administration's (SSA) regulations did not use the term. *See id.* SSR 16-3p clarified that "subjective symptom evaluation is not an examination of an individual's character" and that a two-step evaluation process must be used. See id. Step one is to determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. *See id.* at 49,463–64. Step two is to evaluate the intensity and persistence of an individual's symptoms, such as pain, and determine the extent to which an individual's symptoms limit her ability to perform work-related activities. *See id.* SSR 16-3p provides that an ALJ is to consider all of the evidence in an individual's record when evaluating the intensity and persistence of the symptoms.

In this case, the Court finds that the ALJ did not error by improperly considering Plaintiff's subjective complaints of pain.

In her decision, the ALJ accurately summarized the pain standard citing 20 C.F.R. § 404.1529 (Tr. 27), and concluded based on the reasons explained in her decision that although Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 28). While the ALJ considered the objective medical evidence when evaluating Plaintiff's subjective complaints and is permitted to do so, the ALJ also considered other appropriate factors such as daily activities and nature of treatment. (Tr. 29-35). *See* 20 C.F.R. § 404.1529(c)(2). For instance, the ALJ considered Plaintiff's reports that she completed activities of daily living unassisted and was able to drive. (Tr. 33, 347-52). The ALJ also noted that Plaintiff's treatment for her spine disorder and upper extremity arthropathy was routine and conservative and cited medical evidence in support. (Tr. 29).

For example, the ALJ noted that Plaintiff did not receive treatment from an orthopedist and Plaintiff's medical providers did not recommend surgery or epidural injections. (Tr. 29). Significantly, the record consistently demonstrates that conservative treatment from chiropractors and physical therapists adequately controlled Plaintiff's symptoms. (Tr. 29). In February 2017, Plaintiff's VA pain management physician, Darren Mcauley, D.O., related that Plaintiff told him her chiropractic treatment helped and she wanted to continue it. (Tr. 29, 2157; see also Tr. 2015-28 (chiropractic notes)). Additionally, from January 2017 through April 2017, Plaintiff's chiropractor reported that chiropractic treatment relieved Plaintiff's symptoms. (Tr. 29, 2058-95, 2179-87). Additionally, reflecting that Plaintiff's pain was relieved/controlled by chiropractic treatment, treatment notes show that when Plaintiff started chiropractic treatment in January 2017, she rated her pain an 8/10, but by March 2017, Plaintiff rated her pain as a 5/10. (Tr. 29, 2059,

2091). Likewise, January 2014 through February 2016 chiropractic treatment notes document that Plaintiff continually reported that she felt much better after treatment, and that her symptoms were relieved after treatment. (Tr. 29, 549-83, 1605-18, 1781-82, 1980-2010). Further, in April 2016, Plaintiff's physical therapist documented that Plaintiff's physical therapy was "really helping." (Tr. 29, 1723).

The ALJ also considered evidence that Plaintiff worked well after she alleged she became disabled. (Tr. 29). The ALJ considered her earnings record for 2014 and 2015 (Tr. 29, 294, 304-05); her report in March 2015 that she was working part time as an administrative consultant (Tr. 29, 1196 97); and Plaintiff's receipt of unemployment benefits after her alleged disability onset date. (Tr. 29, 390). Here, based on her detailed and extensive analysis of Plaintiff's evidence as a whole, the ALJ properly discounted the alleged severity of Plaintiff's pain and other symptoms for the reasons well-articulated in the decision, such as Plaintiff's treatment history, daily activities and testimony. (Tr. 28-30). In sum, the objective medical and other evidence supports the ALJ's RFC finding and analysis of Plaintiff's subjective complaints.

The Court notes that Plaintiff correctly shows that the ALJ factually erred in finding that Plaintiff's VA medical provider reported that Plaintiff was able to work 40 to 50 hours a week, when in fact, the note actually says "40 to 50 hours a month." (Doc. 27 p. 40; Tr. 29, 873). This factual error, however, does not undermine the substantial evidence supporting the ALJ's decision. Likewise, the other evidence Plaintiff cites in support of her argument does not warrant remand. In determining whether substantial evidence supports an ALJ's credibility determination, "[t]he question is not . . . whether ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011). Furthermore, as noted above, the Court will not reweigh the evidence.

*See Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Plaintiff has failed to demonstrate that the ALJ or the Appeals Council erred in considering Plaintiff's disability claims. Accordingly, the Court finds it appropriate to affirm the Commissioner's decision.

## III.     Conclusion

The decision of the Commissioner is **AFFIRMED.** The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on July 2, 2019.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties